**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| MICHAEL L. LOSOYA, | No. CV 16-8967-PLA |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER** |
| v. | |
| NANCY BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on December 3, 2016, seeking review of the Commissioner's[1] denial of his application for Supplemental Security Income ("SSI") payments. The parties filed Consents to proceed before a Magistrate Judge on December 27, 2016, and January 10, 2017. Pursuant to the Court's Order, the parties filed a Joint Submission (alternatively "JS") on September 21, 2017, that addresses their positions concerning the disputed issues in the case.

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy Berryhill, the current Acting Commissioner of Social Security, is hereby substituted as the defendant herein.

The Court has taken the Joint Submission under submission without oral argument.

## II.

## **BACKGROUND**

Plaintiff was born on November 14, 1962. [Administrative Record ("AR") at 38, 267.] He has no past relevant work experience. [AR at 38, 95.]

On November 23, 2011, plaintiff filed an application for SSI payments, alleging that he has been unable to work since September 8, 2005. [AR at 267.] After his application was denied initially, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 138.] A hearing was held on January 17, 2013, at which time plaintiff appeared represented by an attorney, and testified on his own behalf. [AR at 49-61.] On February 13, 2013, the ALJ issued a decision concluding that plaintiff was not under a disability since November 23, 2011, the date the application was filed. [AR at 113-20.] Plaintiff requested review of the ALJ's decision by the Appeals Council and, on July 29, 2014, the Appeals Council remanded the matter with instructions.[2] [AR at 125-27.] Another hearing was held on August 4, 2015, before a different ALJ, at which time plaintiff again appeared represented by an attorney and testified on his own behalf. [AR at 62-99.] A vocational expert ("VE") also testified. [AR at 94-97.] On September 14, 2015, the ALJ issued a decision concluding that plaintiff was not under a disability since November 23, 2011, the date the application was filed. [AR at 28-39.] When the Appeals Council denied plaintiff's request for review on October 11, 2016 [AR at 1-6], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

/

/

/

---

[2] Plaintiff does not take issue with, and the Court, therefore, does not address, whether the ALJ fully complied with the Appeals Council's remand order.

# III.

# STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (citation and internal quotation marks omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (same). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (citation and internal quotation marks omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (citation and internal quotation marks omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.") (citation omitted).

# IV.

# THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir.

1992).

## A. THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995), as amended April 9, 1996. In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. Id. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

## B. THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since

November 23, 2011, the application date. [AR at 31.] At step two, the ALJ concluded that plaintiff has the severe impairments of diabetes mellitus; arthritis; chronic obstructive pulmonary disease ("COPD"); a depressive disorder; and a history of alcohol abuse, reportedly in remission. [Id.] The ALJ found that plaintiff's alcoholic liver disease and left lower extremity radiculitis were not severe because they do not more than minimally affect his ability to perform basic work-related activity for at least twelve months. [Id.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing. [AR at 32.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] to perform light work as defined in 20 C.F.R. § 416.967(b),[4] as follows:

> [C]an occasionally bend and squat. He must avoid concentrated exposure to fumes, odors, dust, and gasses. He can perform "low stress" work, defined as no fast-pace production quotas and up to specific vocational preparation (SVP) 4.

[AR at 33.] At step four, the ALJ concluded that plaintiff has no past relevant work. [AR at 38.] At step five, based on plaintiff's RFC, vocational factors, and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff can perform, including work as a "mail clerk" (Dictionary of Occupational Titles ("DOT") No. 209.687-026), "office helper" (DOT No. 239.567-010), and "general inspector" (DOT No. 739.687-038). [AR at 39, 94-96.] Accordingly, the ALJ determined that plaintiff was not disabled since November 23, 2011, the date the application was filed. [AR at 39.]

---

[3] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 416.967(b).

# V.

# THE ALJ'S DECISION

Plaintiff contends that (1) the ALJ erred when he assessed plaintiff's RFC and failed to include a limitation to simple repetitive instructions; and (2) the error was not harmless. [JS at 4.] As set forth below, the Court respectfully disagrees with plaintiff and affirms the decision of the ALJ.

## A. FAILURE TO CONSIDER DR. RIAHINEJAD'S OPINION

Plaintiff contends that although "[t]he ALJ gave [great] 'weight to the opinion of consultative psychological examiner, Ahmad R. Riahinejad Ph.D.,'" the ALJ failed to credit Dr. Riahinejad's October 2014 opinion that plaintiff has the ability to understand, remember, and carry out simple and repetitive instructions, and that he would have moderate difficulty understanding, remembering, and carrying out complex and detailed instructions. [JS at 5 (citing AR at 37, 569).] Plaintiff asserts that Dr. Riahinejad's opinion regarding these limitations is "uncontradicted in the record," and the ALJ failed to articulate a reason for leaving these limitations out of the RFC. [Id.] He also submits that based on Dr. Riahinejad's psychological evaluation, which revealed a full scale intelligence quotient score of 75 and only a tenth grade (i.e., limited) education, the ALJ should have found plaintiff limited to simple repetitive instructions and unskilled work, and precluded him from SVP 4 -- semi-skilled -- work. [JS at 5-6.] Instead, the ALJ found him capable of performing semi-skilled SVP 4 work and did not limit him only to work involving simple repetitive instructions or tasks.

Defendant responds that the ALJ properly factored Dr. Riahinejad's limitations into the RFC finding and that substantial evidence supports his decision. [JS at 6 (citing AR at 33).] She submits that based on the medical evidence of record, including Dr. Riahinejad's consultative examination, the ALJ limited plaintiff to low-stress work, no fast-paced production quotas, and work with a maximum SVP of 4. [Id. (citing AR at 33).] She suggests that plaintiff's argument is premised on his own personal interpretation of Dr. Riahinejad's opinion, i.e., that Dr. Riahinejad's opinion should have been interpreted to allow for only simple work, but as the "final arbiter with

respect to resolving ambiguities in the medical evidence," the ALJ "appropriately exercised his discretion," and instead limited plaintiff to performing SVP 4 work. [JS at 7.] Defendant also argues that the ALJ's error, if any, was harmless because the three jobs suggested by the VE "were non-complex, SVP 2 jobs." [Id.]

As noted, the ALJ gave "great weight" to Dr. Riahinejad's opinion. He acknowledged -- without comment -- Dr. Riahinejad's opinion that plaintiff is able to understand, remember, and carry out simple and repetitive instructions, and has moderate difficulty understanding, remembering, and carrying out complex and detailed instructions. [AR at 37.] The ALJ also acknowledged at step two that plaintiff had moderate difficulties with regard to concentration, persistence, or pace. [AR at 33.] Despite Dr. Riahinejad's findings, the RFC -- apparently based only on Dr. Riahinejad's finding that plaintiff's "pace is slow [and] [h]e would have problems with pace in fast paced positions" [AR at 569] -- only limited plaintiff to "'low stress' work, defined [by the ALJ] as no fast-pace production quotas and up to specific vocational preparation (SVP) 4." [AR at 33.] Although defendant suggests that the ALJ's decision not to include Dr. Riahinejad's limitation to simple and repetitive instructions in his RFC determination was based on his role as the "final arbiter with respect to resolving ambiguities in the medical evidence" [JS at 7], neither the ALJ nor defendant point to any contradictory or ambiguous evidence in the record as to this issue. Indeed, it appears that the *only* evidence in the record as to plaintiff's ability to carry out instructions without limitation, i.e., Dr. Riahinejad's opinion, indicates plaintiff is limited to simple and repetitive instructions.

While an ALJ is not required to address all evidence presented to him, he must explain why significant and probative evidence has been rejected. Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (citation omitted). "[A]n explanation from the ALJ of the reason why probative evidence has been rejected is required so that . . . [the] [C]ourt can determine whether the reasons for rejection were improper." Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981) (citation omitted). Moreover, an ALJ must consider all of the relevant evidence in the record and may not point to only those portions of the record that bolster his findings. See, e.g., Holohan v. Massanari, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (holding that an ALJ cannot selectively rely

on some entries in plaintiff's records while ignoring others); Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) ("[T]he [ALJ]'s decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'") (citing Sousa v. Callahan, 143 F.3d 1240, 1243 (9th Cir. 1998)); see also Reddick, 157 F.3d at 722-23 (it is impermissible for the ALJ to develop an evidentiary basis by "not fully accounting for the context of materials or all parts of the testimony and reports"); Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability."); Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is not permitted to reach a conclusion "simply by isolating a specific quantum of supporting evidence."); Whitney v. Schweiker, 695 F.2d 784, 788 (7th Cir. 1982) ("[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion.") (citation omitted); Switzer v. Heckler, 742 F.2d 382, 385-86 (7th Cir. 1984) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability.").

In this case, it is undisputed that the ALJ did not include in his RFC determination Dr. Riahinejad's findings regarding plaintiff's ability to understand, remember, and carry out simple and repetitive instructions, and his moderate limitation in understanding, remembering and carrying out complex and detailed instructions. [AR at 569.] Neither did the ALJ provide any rationale for rejecting what would appear to be significant and probative evidence of plaintiff's functional limitations.

Therefore, the ALJ's failure to include these limitations in his RFC was error.

**B. HARMLESS ERROR**

**1. The Parties' Contentions**

Plaintiff contends that the position of mail clerk, with a reasoning level of 3, would be in conflict with a limitation to simple, repetitive instructions or tasks. [JS at 9.] He argues that the office helper position, which the DOT describes as requiring workers with a "temperament V," and reasoning level 2, means that the worker would be required to "[p]erform[] a variety of duties, often changing from one task to another of a different nature without loss of efficiency or composure."

[Id. (citing The Revised Handbook for Analyzing Jobs).] Because plaintiff could not perform a variety of duties if the ALJ had properly found a limitation to simple, repetitive instructions, plaintiff submits that the ALJ's failure to include that limitation was harmful. [Id.]

Plaintiff also relies on the Occupational Outlook Handbook ("OOH") to argue that the occupations of mail clerk, office helper, and inspector all require a high school diploma or equivalent education to perform. [JS at 9-10 (citations omitted).] He submits, therefore, that because he has a "limited" education, he is unable to perform these occupations. [Id.] Plaintiff also states that the occupation of inspector requires "moderate-term on-the-job training," which, according to the OOH, means "more than 1 month, and up to 12 months, of combined on-the-job experience and informal training that is needed for the worker to attain competency in the skills needed in the occupation." [JS at 10 (citations omitted).] Therefore, he submits, the position of inspector is not an unskilled job and, with plaintiff's limitation to simple repetitive instructions, he is unable to perform it.

Defendant responds that the ALJ posed a complete hypothetical, "accurately reflecting one with Plaintiff's RFC and vocational profile." [JS at 11.] She argues that plaintiff bases his argument "on the false presumption that the ALJ provided an RFC finding for simple, repetitive tasks." [JS at 12.]

### 2. Analysis

Preliminarily, the Court notes that the Administration defines "unskilled work" as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time . . . . [A] person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed." 20 C.F.R. § 416.968(a). Unskilled jobs "ordinarily involve dealing primarily with objects, rather than with data or people . . . ." Soc. Sec. Ruling 85-15. All jobs listed in the DOT have both general education development reasoning levels ("GED" or "reasoning level"), and SVP levels, which are "two separate vocational considerations." Meissl v. Barnhart, 403 F. Supp. 2d 981, 983 (C.D. Cal. 2005).

"SVP ratings speak to the issue of the level of vocational preparation necessary to perform

the job, not directly to the issue of a job's simplicity, which appears to be more squarely addressed by the GED [reasoning level] ratings." Id. An SVP of 4 indicates that the position would require from 3 to 6 months of training, and mean that plaintiff is capable of performing semi-skilled work. DOT app. C. An SVP of 2 reflects that the position would require anything beyond a short demonstration up to and including 1 month of training, i.e., unskilled work. See Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990) (citing 20 C.F.R. § 404.1568(a); see also 20 C.F.R. § 416.968(a)).

According to the DOT, occupations with a GED or reasoning level 1 require the ability to "apply commonsense understanding to carry out simple one- or two-step instructions [and] [d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." DOT app. C. In contrast, reasoning level 2 requires the individual to carry out "*detailed* but *uninvolved* written or oral instructions," and reasoning level 3 requires the individual to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form." Id. Here, Dr. Riahinejad found plaintiff had the ability to understand, remember, and carry out simple and repetitive instructions. [AR at 569.] As discussed above, the ALJ did not include this limitation in his RFC determination. However, even if the ALJ had included an RFC limitation to simple, repetitive instructions, and even assuming there is a conflict between a limitation to simple, repetitive instructions, and the ability to perform the reasoning level 3 position of mail clerk and the reasoning level 2 position of office helper (see Zavalin v. Colvin, 778 F.3d 842, 847 (9th Cir. 2015), Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1003-04 & n.6 (9th Cir. 2015)), any error was harmless as plaintiff could still perform the third occupation of general inspector, which has a reasoning level of 1 and an SVP of 2[5] (DOT No. 739.687-038) --

---

[5] The position of "block inspector" requires the individual to "[o]bserve wooden match blocks passing on conveyor and remove[] those containing pitch pockets, faulty grain, and knots." DOT No. 739.687-038. There is no indication as to whether this work would qualify as "fast paced" work, although light work by definition might require walking or standing to a significant degree; *or* require sitting most of the time but pushing and/or pulling arm or leg controls; *and/or* "require working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible." Id. The DOT does state that this occupation
(continued...)

consistent with plaintiff's RFC limitations.

The Court finds unpersuasive plaintiff's argument that the level of education required for the inspector position is a high school diploma or equivalent. The OOH states that the "*typical entry-level education*" for quality control inspectors -- the group that encompasses the occupation of block inspector [see JS at 10-11] -- is high school diploma or equivalent. Bureau of Labor Statistics, U.S. Department of Labor, OOH, Quality Control Inspectors, available at https://www.bls.gov/OOH/production/quality-control-inspectors.htm (last visited October 11, 2017) (emphasis added). It does not state, as asserted by plaintiff, that a high school diploma is *required*. See George v. Berryhill, 2017 WL 1709599, at *14 (C.D. Cal. Apr. 30, 2017) (noting that the OOH descriptions describing an occupation as "usual[ly]" or "typical[ly]" requiring a high school diploma allow for less education). Here, the ALJ directed the VE to take plaintiff's 11 years of schooling into account,[6] and the VE determined the hypothetical individual could still perform the occupation of inspector. [AR at 95.] The ALJ was entitled to rely on the testimony of the VE. Bayliss v. Barnhart, 427 F.3d 1211, 1228 (9th Cir. 2005) ("A VE's recognized expertise provides the necessary foundation for his or her testimony . . . no additional foundation is required").

Similarly, plaintiff's argument that the OOH states that the inspector occupation requires more than one month of training is unpersuasive. The Commissioner takes administrative notice of the OOH pursuant to 20 C.F.R. §§ 404.1566(d)(5), 416.966(d)(5), as one of "various governmental and other publications" -- which also include the DOT -- considered to be a reliable source. Social Security Ruling ("SSR")[7] 00-4p, however, states that adjudicators must "[i]dentify

---

[5](...continued)
requires performing repetitive or short-cycle work. Id. However, in his hypothetical to the VE the ALJ included a limitation to "no fast-pace quotas, otherwise known as low stress [work]," and the VE stated that he did not "consider these jobs [i.e., the jobs of mail clerk, office helper, and general inspector] fast-paced, as long as the job is completed at the end of the day." [AR at 95.]

[6] According to Dr. Riahinejad's report, plaintiff completed the 10th grade and was a "below average student in special education classes." [AR at 565.]

[7] The Commissioner issues SSRs "to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the [Social Security Administration].
(continued...)

1 and obtain a reasonable explanation for any conflicts between occupational evidence provided by
2 VEs . . . and information in the [DOT], including its companion publication, the Selected
3 Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO) .
4 . . ." SSR 00-4p. The ruling specifically identifies only the DOT and one specific companion
5 publication, the SCO -- there is no mention of the OOH. Thus, the Court finds that the DOT's
6 description of this occupation as being SVP 2 -- requiring up to and including 1 month of training --
7 is controlling. See Walker v. Berryhill, 2017 WL 1097171, at *3 (C.D. Cal. Mar. 23, 2017) (citing
8 cases rejecting the argument that the DOT and the OOH should be on "equal footing").

Based on the foregoing, even if plaintiff was limited to simple repetitive instructions, he remains able to perform the job of general inspector. Therefore, the ALJ's failure to include Dr. Riahinejad's limitation to simple repetitive instructions in his RFC determination was harmless error.

/
/
/
/
/
/
/
/
/
/
/

---

[7](...continued)
SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (internal citations omitted).

## VI.
## CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **denied**; and (2) the decision of the Commissioner is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: October 11, 2017

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE